IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTONIO GIBSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-2748-G-BN |
| | § | |
| FAY SERVICING LLC, its | § | |
| successors and/or assigns, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONLCUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge A. Joe Fish. *See* Dkt. No. 2.

Defendant Fay Servicing LLC has filed a Motion for Summary Judgment, *see* Dkt. No. 33, and a Motion for Leave to File Supplemental Appendix to Defendant's Brief in Support of its Motion for Summary Judgment, *see* Dkt. No. 46.

For the reasons explained below, the Court should grant the Motion for Summary Judgment [Dkt. No. 33] and deny the Motion for Leave [Dkt. No. 46].

**Background**

I.    **Factual History**

The following facts come from the summary judgment record and are either undisputed or set forth in the light most favorable to Gibson as the non-movant plaintiff.

-1-

This case arises out of Gibson's default on a Texas home equity loan (the "Loan") and Fay's alleged misconduct related to the financed purchase and attempted foreclosure of Gibson's home, located at 2842 Singletree Cove, Cedar Hill, Texas 75104 (the "Property"). *See* Dkt. No. 13 at 3-16. (The Court's citations to page numbers in the record correspond with document page numbers, which may differ from printed page numbers or Bates numbers.)

On July 14, 2006, Gibson executed a Texas Home Equity Note (the "Note") in the amount of $376,000.00 payable to H & R Block Mortgage Corporation. *See* Dkt. No. 43 at 23-28. The Note was secured by a Texas Home Equity Security Instrument (the "Security Instrument" or the "Deed of Trust"). *See id.* at 29-52.

Facing financial hardship, Gibson executed a loan modification agreement (the "First Modification Agreement") on January 16, 2014. *See* Dkt. No. 42 at 10-22; Dkt. No. 43 at 53-68. He executed a second loan modification agreement (the "Second Modification Agreement") on December 31, 2015, at which time Caliber Home Loans, Inc. ("Caliber") was servicing the Loan. *See* Dkt. No. 43 at 69-75.

The Note and Security Instrument – the Loan – were assigned to U.S. Bank Trust National Association, Not in its Individual Capacity but Solely as Trustee of LSF9 Master Participation ("U.S. Bank") in December 2016. *See* Dkt. No. 35 at 46-47. U.S. Bank remains the current mortgagee on the Loan. *See id.* at 8.

Gibson unsuccessfully filed for bankruptcy three times between March 2017 and October 2018. *See* Dkt. No. 43 at 77-105. He filed for bankruptcy a fourth time in January 2020. *See id.* at 117-121.

On January 22, 2019, after his third bankruptcy case was dismissed, U.S. Bank applied for an Expedited Order of Foreclosure of the Property under Texas Rule of Civil Procedure 736. *See id.* at 112-16. In July 2019, the Dallas County District Court issued an order permitting foreclosure on the Property. *See* Dkt. No. 35 at 82-83.

Gibson submitted a loss mitigation application (the "Application") to Caliber on November 20, 2020. *See* Dkt. No. 43 at 128-32.

On February 4, 2021, Caliber informed Gibson that the servicing of his loan was being transferred to Fay effective February 26, 2021. *See id.* at 134. And on February 9, Caliber confirmed receipt of the Application and informed Gibson that his Application was "considered complete." *Id.* at 135.

On February 21, Gibson sent Caliber a letter confirming receipt of their February 4 and 9 correspondence and asking how the transfer of the loan servicing to Fay would "impact [his] loan modification process." *Id.* at 136. On February 23 and 25, Caliber informed Gibson that additional documents were required to complete his Application. *See id.* at 137-39.

Fay sent Gibson a welcome letter on March 8, 2021 informing him that Fay was now servicing his loan. *See id.* at 142-49. On the same day, Fay sent Gibson a separate Fair Debt Collection Practice Act ("FDCPA") Validation Notice, which described the total amount owed under the Loan as $532,869.07. *See id.* at 150.

On March 16, 2021, Gibson sent the requested missing documents to Caliber. *See id.* at 153-58.

Fay sent Gibson a monthly mortgage statement (the "Statement") dated April

10, 2021 with a past-due amount of $198,426.07. *See id.* at 159-60.

On April 19, 2021, Gibson spoke with James Palikan, a representative at Fay, about his Application. *See id.* at 9. Gibson asked Palikan to confirm that Fay had received his complete Application, including the additional documents he sent to Caliber after the transfer to Fay. *See id.* at 9-10. Gibson also told Palikan that he was disputing the amounts claimed by Fay in the Validation Notice and the Statement. *See id.* at 10. Palikan confirmed that Fay would investigate the dispute and confirmed receipt of the complete Application. *See id.* The same day, Gibson emailed Eddie Galvan, another representative at Fay, memorializing the conversation. *See id.* at 161-62.

Gibson received a Notice of Substitute Trustee's Sale dated July 30, 2021 advising him that his Property would be posted for a foreclosure sale on September 7, 2021. *See id.* at 163-67.

Gibson then called Fay on August 5, 2021, asking about the status of his loan modification Application and why the Property was posted for foreclosure. *See id.* at 10-11. Lou Visconti, an account representative at Fay, told Gibson that Fay had discarded his Application and that he would need to reapply, but he did not explain why it was discarded or update Gibson on the status of his dispute of the amount owed on the Validation Notice and Statement. *See id.* at 11. Gibson then filed a complaint with the Consumer Financial Protection Bureau ("CFPB") and the Attorney General of Texas. *See id.* at 168-76.

On August 9, 2021, Gibson spoke with Galvan on the phone, and Galvan told

-4-

Gibson that Fay "had never received the additional documents from Caliber and that [his Application] had been cancelled as a result." *Id.* at 11. In an email to Galvan, Gibson relayed Caliber's confirmation that, on March 18, 2021, it received and processed the additional documents. *See id.* at 178. Gibson then forwarded the documents to Galvan. *See* Dkt. No. 35 at 105-07.

Fay responded to the CFPB complaint on August 20, 2021 and indicated that there was "misinformation" in Gibson's monthly statement. *Id.* at 182. And, so, Fay placed the scheduled foreclosure sale on hold. *See id.* Fay told Gibson that "[t]he updated reinstatement quote [would] be mailed to [him] on August 27, 2021." *Id.*

Gibson received two new monthly mortgage statements in 2024 (the "2024 Statements"). The first statement, dated February 12, 2024, added $12,239.18 for "recoverable corporate advances." Dkt. No. 42 at 17; Dkt. No. 43 at 228-30. It also included a "Late Charge" of $142.01. *See* Dkt. No. 43 at 229. The second statement, dated April 16, 2024, contained a new "recoverable corporate advances" amount of $24,430.37, along with other line items. Dkt. No. 42 at 17; Dkt. No. 43 at 231-34.

## II.   Procedural History

On September 1, 2021, Gibson filed a lawsuit in the 191st District Court, Dallas County, Texas (the "Prior Lawsuit"). *See* Dkt. No. 43 at 189-203. Gibson sought a temporary restraining order and temporary injunction to prevent the foreclosure sale. *See id.* He also sought damages and attorneys' fees for breach of contract; common law fraud; and violations of the Real Estate Settlement Procedures Act ("RESPA"), as implemented by 12 C.F.R. Part 1024 ("Regulation X"), and the Texas Debt

Collection Act ("TDCA"). *See id.* U.S. Bank was the only defendant. *See id.* at 200-01.

U.S. Bank removed the lawsuit to federal court. *See id.* at 13. On March 25, 2022, Gibson moved to add Fay as a defendant, but the Court denied leave. *See id.* at 204-218. On September 16, 2023, the Court dismissed all of Gibson's claims with prejudice. *See id.* at 219-22; *Gibson v. U.S. Bank Trust Nat'l Ass'n*, No. 3:21-cv-2210-G-BT, 2023 WL 6067430 (N.D. Tex. Aug. 31, 2023), *rec. adopted*, 2023 WL 6119377 (N.D. Tex. Sept. 16, 2023).

Gibson then filed this lawsuit in state court on November 29, 2023, naming Fay as the sole defendant. *See* Dkt. No. 1-1 at 15-40. Gibson alleged claims against Fay for common law fraud; negligent misrepresentation; and violations of RESPA and the TDCA. *See generally id.* The petition included an application for a temporary restraining order and temporary injunction, seeking to prevent Fay from foreclosing on the Property. *See id.* at 29-30. And it included a request for exemplary damages. *See id.* at 37.

Fay removed the case to this Court based on federal question and supplemental jurisdiction. *See* Dkt. No. 1; 28 U.S.C. §§ 1331 & 1367.

Gibson then filed an amended complaint, which removed his request for temporary injunctive relief but otherwise maintained the substantive claims against Fay. *See* Dkt. No. 13.

Fay moved for summary judgment on all the claims. *See* Dkt. No. 33.

The Court administratively closed the case for 90 days to allow Gibson time to obtain new counsel after his attorney withdrew. *See* Dkt. No. 38 at 2-3. And the Court

stayed Gibson's obligation to respond to the summary judgment motion during that period. *See id.* at 3.

Gibson obtained new counsel within the 90-day period, *see* Dkt. No. 40, and responded, *see* Dkt. Nos. 41-43.

The Court ordered Fay to file its reply, if any, by July 31, 2025, and *sua sponte* reopened the case. *See* Dkt. No. 45. On July 31, Fay filed a Motion for Leave to File Supplemental Appendix to Defendant's Brief in Support of its Motion for Summary Judgment. *See* Dkt. No. 46. And it filed a reply brief in support of its summary judgment motion. *See* Dkt. No. 47.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). And "[a] factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625

(5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625.

"The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)); *Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932

F.3d 353, 355 (5th Cir. 2019) (A court must "view the evidence and draw all justifiable inferences in favor of the nonmovant. Even so, barebones, conclusory, or otherwise-unsupported assertions won't cut it; the nonmovant 'must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.'" (footnotes omitted)).

So, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

But, if "the movant bears the burden of proof on an issue, either because he is

the plaintiff or as a defendant he is asserting an affirmative defense," for example, that movant "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*,780 F.2d 1190, 1194 (5th Cir. 1986).

Accordingly, the moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). That is, "[w]hen the party moving for summary judgment also bears the burden of proving the claim, he must establish that there is no genuine dispute of material fact as to every element of its claim, so that the evidence is so overwhelming that he is entitled to judgment in his favor." *Turner v. Criswell*, No. 4:19-cv-226-ALM-CAN, 2020 WL 1901086, at *3 (E.D. Tex. Jan. 6, 2020) (cleaned up), *rec, adopted*, 2020 WL 613963 (E.D. Tex. Feb. 10, 2020).

"If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Evanston Ins. Co. v. Lapolla Indus., Inc.*, 93 F. Supp. 3d 606, 611 (S.D. Tex.) (cleaned up; quoting *Meecorp Cap. Markets LLC v. Tex-Wave Indus. LP*, 265 F. App'x 155, 158 (5th Cir. 2008) (per curiam) (quoting *Little*, 37 F.3d at 1075 (5th Cir. 1994)), *aff'd*, 634 F. App'x 439 (5th Cir. 2015) (per curiam).

And, on a plaintiff's motion seeking summary judgment in its favor on its own claims, the Court will "draw all reasonable inferences in favor of the non-moving party" – that is, in favor of the defendant. *Chaplin v. NationsCredit Corp.*, 307 F.3d

368, 372 (5th Cir. 2002).

And, so, this "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007); *accord Wilson v. Dall. Indep. Sch. Dist.*, No. 3:18-cv-34-G-BN, 2020 WL 825819, at *7 (N.D. Tex. Jan. 17, 2020) ("[B]eyond peradventure" means "beyond doubt." (cleaned up)), *rec. adopted*, 2020 WL 821034 (N.D. Tex. Feb. 18, 2020).

But, on a plaintiff's motion on its own claim, "summary judgment is appropriate where the evidence would require a directed verdict." *Hernandez v. Trendy Collections, LLC*, No. 3:17-cv-2049-BN, 2018 WL 4103723, at *13 (N.D. Tex. Aug. 29, 2018) (cleaned up).

That is, a plaintiff may prevail on its claim on its own motion where, drawing all inferences in the defendant's favor and viewing the summary judgment in the light most favorable to the defendant, the evidence is "so overwhelmingly in favor of [the plaintiff] that no reasonable jury could [arrive] at a verdict other than that [the plaintiff] proved" every essential element of its claim against the defendant. *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 795 F. Supp. 2d 493, 550 (N.D. Tex. 2011), *aff'd*, 709 F.3d 515 (5th Cir. 2013).

## Analysis

### I.   The Court should grant Fay's Motion for Summary Judgment.

A. Negligent Misrepresentation

Gibson does not appear to contest Fay's motion for summary judgment on his

negligent misrepresentation claim. *See* Dkt. Nos. 41 & 42.

And, so, the Court should grant summary judgment against Gibson on this claim and dismiss it with prejudice.

### B. Common Law Fraud Claim

The Court should grant summary judgment for Fay on Gibson's fraud claim.

#### 1. *Res Judicata*

Gibson's fraud claim is barred by res judicata because it was, or could have been, raised in the Prior Lawsuit. *See* Dkt. No. 34 at 18.

Under the established principle of res judicata, "a judgment, valid on its face, cannot, in the absence of fraud in its procurement, be collaterally attacked as to mere errors or irregularities committed by the court in the exercise of its jurisdiction or in the course of the proceedings even though errors and irregularities may appear on the face of the record." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466 (5th Cir. 2013) (quoting *Iselin v. Meng*, 307 F.2d 455, 457 (5th Cir. 1962) (quoting, in turn, *Iselin v. La Coste*, 147 F.2d 791, 794 (5th Cir. 1945))).

Its application therefore "does not depend upon whether or not the prior judgment was right." *Id.* (quoting *Meng*, 307 F.2d at 457 (quoting, in turn, *Rubens v. Ellis*, 202 F.2d 415, 418 (5th Cir. 1953)); citations omitted).

This broad principle

> encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Comer*, 718 F.3d at 466-67 (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)). True res judicata "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit," *Test Masters*, 428 F.3d at 571, while

collateral estoppel "precludes relitigation of only those issues actually litigated in the original action, whether or not the second suit is based on the same cause of action," *Moch v. E. Baton Rouge Par. Sch. Bd.*, 548 F.2d 594, 596 (5th Cir. 1977); *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980).

*Hous. Prof'l Towing Ass'n v. City of Hous.*, 812 F.3d 443, 447 (5th Cir. 2016) (citations modified); *see also Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269 n.3 (5th Cir. 1986) ("'[R]es judicata, as the term is sometimes sweepingly used' embraces both "'claim preclusion," or true res judicata' and 'collateral estoppel or "issue preclusion."'" (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978))); *see White v. World Fin. of Meridian, Inc.*, 653 F.2d 147, 150 & n.5 (5th Cir. Unit A 1981). '[R]es judicata forecloses all that which might have been litigated previously, [whereas] collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit.' *In re Shuler*, 722 F.2d 1253, 1255 (5th Cir. 1984) (citation omitted).").

To reiterate, regardless which of the two doctrines is invoked, "the idea is that an issue definitively settled once is 'forever settled as between the parties.'" *Langley v. Prince*, 926 F.3d 145, 163-64 (5th Cir. 2019) (en banc) (quoting *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931); citation omitted).

### a. True Res Judicata

Under federal law, true res judicata, or claim preclusion, "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters*, 428 F.3d at 571 (citation omitted). In the Fifth Circuit, "[t]he test for res judicata has four elements: (1) the parties are identical or in privity; (2) the

judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Id.*

Based on the pleadings and exhibits in this case and in the Prior Lawsuit, of which the Court can appropriately take judicial notice to the extent required for the analysis, the undersigned concludes that the four elements of the test for res judicata are met.

First, the prior and current defendants are in privity. The Prior Lawsuit was litigated between Gibson and U.S. Bank. *See* Dkt. No. 34 at 19; Dkt. No. 35 at 130. And U.S. Bank and Fay are in privity because U.S. Bank is the assignee of the Loan and Fay is the servicer for the Loan. *See* Dkt. No. 35 at 46-47; Dkt. No. 43 at 134; *see also Davis v. Ocwen Loan Servicing LLC*, No. 3:18-cv-2720-B-BN, 2020 WL 1910137, at \*5 (N.D. Tex. Jan. 27, 2020) (citing *Russell v. SunAm. Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992), and finding mortgagee and servicer are in privity), *rec. adopted*, 2020 WL 880855 (N.D. Tex. Feb. 24, 2020).

Second, the Prior Lawsuit was removed to this Court, which was of competent jurisdiction. Gibson raised claims under federal law in the Prior Lawsuit, making jurisdiction proper under 12 U.S.C. § 1331. *See* Dkt. No. 35 at 139.

Third, the Court in the Prior Lawsuit entered a final judgment on the merits. In the Prior Lawsuit, the Court dismissed all of Gibson's claims with prejudice. *See* Dkt. No. 35 at 402; *see also Oyekwe v. Research Now Group, Inc.*, 542 F. Supp. 3d 496, 509 (N.D. Tex. 2021) (holding prior lawsuit adjudicated on the merits where "district

court entered a final judgment dismissing the prior case with prejudice").

Fourth, the same claims are involved in both suits. To determine whether the same claims are involved, courts in this circuit use "a 'transactional test,'" under which "[t]he critical issue is whether the two suits are based on the 'same nucleus of operative facts.'" *Chalmers v. City of Dallas*, No. 3:14-cv-36-N, 2014 WL 7174289, at *6 (N.D. Tex. Dec. 16, 2014) (quoting *Test Masters*, 428 F.3d at 571); *see Test Masters*, 428 F.3d at 571 ("Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." (citing *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395-96 (5th Cir. 2004)); *see also Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 522 (5th Cir. 2016) ("True res judicata bars recovery when a party seeks to relitigate the same facts even when the party argues a novel legal theory." (citing *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994))); *Alexander v. Hood for State of Miss.*, No. 3:16-cv-00202-GHD-JMV, 2017 WL 3585470, at *3 (N.D. Miss. Aug. 16, 2017) ("[T]he transactional test is [] met ... [if] the claims could or should have been brought in the first action. From Plaintiff's factual allegations in all three cases, it is clear that Plaintiff had notice of the facts giving rise to these claims at the time of the first case and that the Section 1983 claims could have been ruled on by that Court.").

When making this determination, the Court must think "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their

treatment as a unit conforms to the parties' expectations or business understanding or usage." *Test Masters*, 428 F.3d at 571.

Here, Gibson "concedes that the Prior Lawsuit was based on the same 'nucleus of operative facts' as [his] present cause of action." Dkt. No. 42 at 21 (quoting *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007)).

In the Prior Lawsuit, Gibson's common law fraud claim was based on his allegations that Fay

> specifically told [him] that he would be provided with a loan modification in March 2021 after he had submitted a "complete" loan modification application, but then wholly failed or refused to ever provide him with the promised modification, and instead proceeded to accelerate [his] loan and post his homestead property for foreclosure sale.

Dkt. No. 43 at 198.

> In the current lawsuit, Gibson's claim is

> based upon the misrepresentation by Palikan that [Fay] "was in receipt of his loan modification package from the prior servicer and that Fay would continue with a review of the application, and then subsequently Defendant Fay instead 'discarded' Plaintiff's application without any notice and proceeded to post Plaintiff's property for foreclosure sale."

Dkt. No. 42 at 20 (quoting Dkt. No. 13 at 17). Gibson also alleges that Fay committed fraud

> wherein it specifically acknowledged and confirmed that the prior servicer had provided erroneous amounts that were due and owing, and which erroneous information was then provided to Plaintiff in the April 10, 2021 [S]tatement and the disputed [Validation Notice], which Plaintiff timely disputed, and of its promise to cancel the pending foreclosure sale and that it would provide an updated amortization and reinstatement quote with the correct amount due and owing, all of which representations Plaintiff also relied upon to his detriment, and instead Defendant Fay never provided any of the promised information and continued to pursue the pending foreclosure sale and would have completed the sale but for Plaintiff's filing of the prior lawsuit … .

Dkt. No. 13 at 17.

No matter how he labels the current claims, their underlying series of facts are identical, and those facts have been raised in the Prior Lawsuit. Both fraud claims were based, at least in part, on Gibson's communication with Palikan about the receipt and status of the Application. And Gibson had notice of these facts when he filed the Prior Lawsuit. *See Alexander*, 2017 WL 3585470, at *3.

And it does not matter that Gibson may add some factual allegations (about the Validation Notice and Statement) to those in the Prior Lawsuit or that he asserts different theories of liability, as those facts and those theories do not remove the current claim from the same nucleus of operative facts as the Prior Lawsuit. *Accord Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 315 (5th Cir. 2020) ("Centered on the 2004 mortgage and the subsequent assignment, the present lawsuit 'stem[s] from the same 'nucleus of operative fact' and 'involves the same body of evidence' as the previous lawsuits … .") (cleaned up); *Butts v. JP Mogan Chase Bank*, No. 3-11-cv-2542-M-BD, 2011 WL 710344, at *2 (N.D. Tex. Dec. 28, 2011) ("[T]he court has little difficulty concluding that both the instant action and the prior litigation arise out of the 'same nucleus of operative facts' – the mortgage loan obtained by plaintiff on the subject property."), *rec. adopted*, 2012 WL 258269 (N.D. Tex. Jan. 27, 2012).

And Gibson's current fraud claim, even with the additional allegations, could have been raised in the Prior Lawsuit.

In the Prior Lawsuit, Gibson moved to amend his complaint to join Fay as a defendant on March 25, 2022. *See* Dkt. No. 43 at 205-09. But "the parties' deadline to

amend their pleadings and join additional parties expired on December 31, 2021." *Id.* at 213. The Court denied Gibson's motion for leave because it determined that Gibson's delay was "unexcused" and that he had "not demonstrated good cause for modifying the Scheduling Order." *Id.* at 217, 218.

The Fifth Circuit has held that "theories which were the subject of an untimely motion to amend, filed in the earlier action, 'could have been brought' there." *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 563 (5th Cir. 1983) ("To reward [plaintiff] for her own delinquency by permitting her to maintain this action would be clearly at variance with [the] principle [of res judicata].").

Here, the facts underlying Gibson's current claim (the April 19, 2021 communication with Palikan; the April 10, 2021 transmission of the Statement; the March 8, 2021 transmission of the Validation Notice; and the August 20, 2021 communication from Fay about the erroneous amounts and forthcoming correction) occurred before Gibson filed his complaint in the Prior Lawsuit on September 1, 2021, and, so, before the December 31, 2021 deadline to amend his complaint had passed. *See* Dkt. No. 43 at 189-201; *cf. ASARCO, L.L.C. v. Montana Resources, Inc.*, 858 F.3d 949, 957 (5th Cir. 2017) (holding that plaintiff was not barred by res judicata because "the facts that spurred the present breach of contract claim … had not occurred at the time of the prior suit").

And, so, the Court should conclude that Gibson's common law fraud claim is barred by res judicata.

### b.  Collateral Estoppel

Fay also moves for summary judgment on "the loan mitigation application issue," Dkt. No. 34 at 26, under the narrower doctrine of collateral estoppel, which "precludes a party from litigating an issue already raised in an earlier action between the same parties only if: (1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004) (footnotes omitted); *see also Hacienda Records, L.P. v. Ramos*, 718 F. App'x 223, 228 (5th Cir. 2018) (per curiam) ("Issue preclusion or collateral estoppel prevents a party from litigating an issue it previously 'litigated and lost' in another action" and thus "'prevent[s] repetitious litigation of what is essentially the same dispute,'" in addition to "'conserving judicial resources, [] maintaining consistency, and [] avoiding oppression or harassment of the adverse party.'" (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 (1979); Restatement (Second) of Judgments § 27, cmts. c, e (1982))).

"Complete identity of parties in the two suits is not required" to establish collateral estoppel under federal law. *Wehling v. Columbia Broad. Sys.*, 721 F.2d 506, 508 (5th Cir. 1983). Instead, "[t]he federal principle of collateral estoppel precludes re-litigation of an adversely decided issue by a party who has once had a full and fair opportunity to litigate the issue, regardless of whether his present adversary was a party to the previous lawsuit." *Id.* (cleaned up). And, "[u]ltimately, a determination that privity exists represents a legal conclusion that the relationship

between the one who is a party on the record and the non-party is sufficiently close." *Tex. v. Dep't of Labor*, 929 F.3d 205, 211 (5th Cir. 2019) (cleaned up); *see also id.* (observing that, "[f]or privity, [f]ederal courts have deemed three types of relationships sufficiently close to justify preclusion: (1) a non-party who has succeeded to a party's interest in property, (2) a non-party who controlled the original suit, and (3) a non-party whose interests were represented adequately by a party in the original suit" (cleaned up)).

Here, Fay and U.S Bank are in privity as loan servicer and mortgagee. *See Davis*, 2020 WL 1910137, at *7.

Fay argues that "[t]he primary contested issue before the Court is the same issue that was litigated, decided, and at the crux of the judgment in the [Prior] Lawsuit: whether the misrepresentations about Gibson's loan modification [A]pplication are meritless." Dkt. No. 34 at 26.

Gibson responds that the issues are not identical and were not actually litigated in the Prior Lawsuit. The undersigned agrees and finds that Fay frames the issues litigated in the two lawsuits too broadly.

As phrased in the Findings, Conclusions, and Recommendation of the United States Magistrate Judge from the Prior Lawsuit, Gibson's fraud claim in the Prior Lawsuit was based on allegations that Fay "told [him] that he would be provided with a loan modification." *Gibson*, 2023 WL 6067430, at *4. Here, Gibson's fraud claim is based, in part, on allegations that Fay told him it "was in receipt of his [Application]" and that it "would continue with a review of the [A]pplication. Dkt. No. 13 at 17. So,

-22-

while the first claim was based on a promise to give Gibson a modification in the future, the current claim is based on assurances from Fay that the review process was underway at the time. While both issues involve the Application's status, the undersigned is not convinced that they are "identical."

Further, in the Prior Lawsuit, the Court found that the fraud claim was barred by the statute of frauds, so it did not determine whether Fay's conduct was fraudulent. Dkt. No. 35-1 at 236. And, so, the undersigned finds that the issues here were not "actually litigated" in the Prior Lawsuit.

The Court should find that collateral estoppel does not apply to the issue of Gibson's Application. But because true res judicata applies, the Court should find that the fraud claim is barred.

### 2. Economic Loss Doctrine

Even if Gibson's fraud claim were not barred by res judicata, it would be barred by the economic loss doctrine.

Under Texas law, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1, 12 (Tex. 2007). And, so, tort damages are generally not recoverable if the defendant's conduct "would give rise to liability only because it breaches the parties' agreement." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) ("When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.").

But tort damages are recoverable if the defendant's conduct "would give rise to liability independent of the fact that a contract exists between the parties." *Id.*

"In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C. Penney Co.,* No. 3:05-cv-2499-L, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.,* 960 S.W.2d 41, 45-47 (Tex.1998)); *DeLanney,* 809 S.W.2d at 494-95.

Gibson contends that the economic loss rule does not apply to his fraud claim against Fay because Fay is not a party to the Security Instrument and, so, has "no contractual privity" with him. Dkt. No. 42 at 27.

But the economic loss rule is consistently applied to claims against mortgage servicers. *See, e.g.*, *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 583-84 (N.D. Tex. 2013); *Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561, 577 (S.D. Tex. 2012); *Mitchell v. Carrington Mortg. Servs., LLC*, No. 3:19-cv-1173-E, 2020 WL 825817, at *4-*5 (N.D. Tex. Jan. 30, 2020); *Hammond v. Ocwen Loan Servicing, LLC*, No. 3:25-cv-2599-BN, 2014 WL 5326722, at *4-*5 (N.D. Tx. Oct. 20, 2014). Here, Gibson "makes no allegations suggesting any duty between the parties other than [suggesting] that [Fay] owed him a duty under the [Loan] as a mortgage servicer." *Cruz v. Compu-Link Corp.*, No. 2:22-cv-243, 2023 WL 4543584, at *4-*5 (S.D. Tex.

May 9, 2023). And, so, the undersigned rejects Gibson's argument that the economic loss rule cannot apply to his claim against Fay.

Further, Gibson's fraud claims are based on Fay's alleged misrepresentations of his loan balance and the status of his Application, and Gibson claims that he sustained damages as a result of his reliance on those statements – that is, his claims "derive[] from the default and enforcement of the indebtedness at issue" and the Loan that Fay services. *Kiper*, 884 F. Supp. 2d at 573*; accord Cruz*, 2023 WL 4543584, at *3 ("Most of Plaintiff's damages stem from the Loan Agreement, i.e., 'additional charges to his loan balance and escrow account.'").

And, so, Gibson's fraud claim fails because his "alleged tort damages are economic and arise from claims dependent upon the existence of a contract." *Kiper*, 884 F. Supp. 2d at 573; *accord O'Leary v. JP Morgan Chase Bank N.A.*, No. 3:13-cv-4484-M-BN, at *4 (N.D. Tex. Apr. 15, 2014) (finding economic loss rule barred plaintiff's negligent misrepresentation claim against servicer "based on allegations that Defendants made false statements that they would review and evaluate his applications for mortgage assistance and that he sustained damages as a result of his justifiable reliance on those statements"); *Miller*, 970 F. Supp. 2d at 583 (finding that, if plaintiff was alleging fraud claims separate from fraudulent inducement against servicer, those claims would be barred under the economic loss rule because "Plaintiff alleges that Defendant repeatedly misled her with false information regarding the possibility of obtaining a loan modification and about her eligibility for the loan

modification and that she relied on these representations to her detriment and suffered damages").

The undersigned concludes that both res judicata and the economic loss doctrine bar Gibson's fraud claim. And it need not address Fay's argument that the statute of frauds also bars the claim.

And, so, the Court should grant summary judgment for Fay on the fraud claim and dismiss it with prejudice.

C. RESPA and Regulation X

The Court should grant summary judgment for Fay on Gibson's RESPA claims.

### 1. Section 1024.41 Claim

Regulation X restricts a mortgage servicer's ability to engage in dual tracking – simultaneously evaluating a borrower's application for loss mitigation options and moving forward with foreclosure. *See* 12 C.F.R. § 1024. Federal courts have recognized "a federal cause of action against a servicer for dual tracking" under Regulation X. *Wentzell v. JPMorgan Chase Bank, Nat. Ass'n*, 627 F. App'x 314, 318 n.4 (5th Cir. 2015).

Section 1024.41 provides that

> If a servicer received a complete loss mitigation application more than 37 days before a foreclosure sale … a servicer shall … [e]valuate the borrower for all loss mitigation options available to the borrower; and … [p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program … if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time

-26-

the borrower has to file such an appeal and any requirements for making an appeal.

12 C.F.R. § 1024.41(c).

"A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." 12 C.F.R. § 1024.41(c).

### a. Res Judicata

Gibson's Section 1024.41 RESPA claim is barred by res judicata because it could have been raised in the Prior Lawsuit. *See* Dkt. No. 34 at 17.

In the Prior Lawsuit, Gibson's RESPA claim was based on the same allegations about the Application's status as his fraud claim. *See* Dkt. No. 43 at 198.

In the current lawsuit, Gibson's amended complaint states that Fay violated Section 1024.41 by

> confirming to Plaintiff in April 2021 that it had received Plaintiffs complete loan modification application from the prior servicer and that the application review process would continue, and then subsequently "discarding" the application without any written notice only after Plaintiff had reached out and followed up after receiving a foreclosure notice, and then subsequently informing Plaintiff that the pending foreclosure sale would be canceled, and instead proceeding to continue with the foreclosure sale … .

Dkt. No. 13 at 19. These are the same factual allegations on which Gibson bases his current fraud claim. He also alleges that Fay continued with the foreclosure sale even though he "provided Defendant Fay with the alleged 'missing documents' that he had

previously provided to Caliber on March 16, 2021 via his August 9, 2021 email" to Galvan. *Id.* at 20.

As explained above, the second and third elements of res judicata are satisfied because the court in the Prior Lawsuit was of competent jurisdiction and entered a final judgment on the merits. And, just as with Gibson's fraud claim, his Section 1024.41 claim against Fay is based on the same common nucleus of operative fact – the status of his Application – as his claim against U.S. Bank in the Prior Lawsuit.

But Gibson argues that Fay "is not in privity with U.S. Bank for purposes of" preclusion of the RESPA and Regulation X claim. Dkt. No. 42 at 23-24. It argues that, because RESPA does not impose liability on mortgagees, either directly or vicariously, "U.S. Bank was not liable for any violations of RESPA" and, so, "could not adequately represent [Fay's] defense to the claim." *Id.*; *see Christiana Trust v. Riddle*, 911 F.3d 799, 804 (5th Cir. 2018) ("By its plain terms, the regulation at issue here imposes duties only on servicers.").

But, as explained above, courts have consistently held that mortgage servicers and mortgagees are in privity for res judicata purposes. This is true even where the plaintiff brings RESPA claims. *See, e.g., Burke v. Ocwen Loan Servicing, L.L.C.*, 855 F. App'x 180, 183 (5th Cir. 2021); *Davis v. Select Portfolio Servicing, Inc.*, No. 3:21-cv-3057-G-BN, 2023 WL 2190219, at *4-*5 (N.D. Tex. Jan. 30, 2023); *Tyler v. PHH Mortg. Corp.*, No. 3:19-cv-3007-C-BT, 2020 WL 5520609, at *1-*4 (N.D. Tex. Sept. 4, 2020); *Steele v. Quantum Servicing Corp.*, No. 3:12-cv-2897-L, 2012 WL 5987685, at *5-*6 (N.D. Tex. Nov. 30, 2012), *vacated in part on other grounds*, 2013 WL 3196544

(N.D. Tex. June 25, 2013); *see also Burris v. Van Slyke*, No. 1:19-cv-160-MAC, 2020 WL 1500065, at *3 (E.D. Tex. Mar. 18, 2020) ("All of the Defendants have an interest in the contested loan and are therefore considered in privity with the parties in the first lawsuit, satisfying the first element of *res judicata*.").

The undersigned agrees with Fay that the Court should not "impose a stricter standard for privity than the law requires." Dkt. No. 47 at 6.

And, so, the Court should find that true res judicata bars Gibson's Section 1024.41 RESPA claim.

But Fay's argument that the "loss mitigation application issue" is barred by collateral estoppel is not any more effective against the RESPA claim than the fraud claim. Gibson's Section 1024.41 claim was based on Fay's misrepresentations of the Application's status. But, as explained above, collateral estoppel does not apply to that issue. The underlying issues were not identical. And the Court found that RESPA did not apply to U.S. Bank, so it did not determine if Fay's conduct violated RESPA. *See* Dkt. No. 35-1 at 238. And, so, the Court should reject this argument.

### b. Prior Loss Mitigation Applications

Fay argues that Gibson's Section 1024.41 claim fails as a matter of law because "Section 1024.41 'only applies to a borrower's first loss mitigation application.'" Dkt. No. 34 at 31 (cleaned up). And Fay asserts that "the summary judgment evidence conclusively establishes that Gibson successfully sought loss mitigation options throughout the life of the Loan while in default." *Id.* Fay refers to the First Modification Agreement, executed on January 16, 2014, and the Second Modification

Agreement, executed on December 31, 2015. *See* Dkt. No. 43 at 53-75.

Gibson responds that this exception does not apply because the previous Modification Agreements were not provided by Fay and, so, the Application is his first loss mitigation application with Fay. *See* Dkt. No. 42 at 27-28. But, when faced with this issue, courts in this district have not agreed with Gibson's position. *See, e.g.*, *Good v. Prof-2013-S13 Legal Title Trust IV by U.S. Bank Nat'l Ass'n*, No. 3:17-cv-2967-M-BN, 2019 WL 1533303, at \*7 (N.D. Tex. Jan. 28, 2019), *rec. adopted in part*, 2019 WL 1218993 (N.D. Tex. Mar. 15, 2019) (rejecting similar argument); *Hodge v. Bank of New York Mellon as Trustee (CWABS 2006-SD2)*, No. 3:18-cv-3040-X-BH, 2020 WL 1035243, at \*5 (N.D. Tex. Feb. 12, 2020) (holding that Section 1024.41's requirements only applied to plaintiff's first 2006 application, which was submitted prior to defendant becoming plaintiff's loan servicer).

But the undersigned agrees with Gibson that Fay cannot escape Section 1024.41's requirements because the statute excuses compliance only if "the borrower has been delinquent at all times since submitting the prior application." Dkt. No. 42 at 28 (quoting 12 C.F.R § 1024.41(i)). By submitting copies of the First Modification Agreement and Second Modification Agreement, which outline the new terms of the Loan, *see* Dkt. No. 53-75, Gibson has raised a reasonable fact dispute that his loan was taken out of delinquency after the first modification, *cf. Reyes v. Plainscapital Bank*, No. 7:20-cv-15, 2020 WL 6551164, at \*5 (S.D. Tex. Nov. 6, 2020) ("In response, Plaintiff only provides the facts she alleges in her original verified petition and her attached affidavit, which conclusorily state that she sent a signed 'approved' loan

modification agreement to Defendant in September 2019, that Defendant subsequently 'misplaced.'").

Fay also contends that Gibson's claim fails because he "did not submit a complete loss mitigation application at least 37 days prior to the posted foreclosure sale." Dkt. No. 34 at 32. But the undersigned finds that Gibson's conversation with Palikan and email to Galvan – suggesting that Fay was in receipt of a complete application – raise a reasonable factual dispute as to whether the Application was complete. *See* Dkt. No. 43 at 9-10, 161-62.

And, so, Fay was not exempt from Section 1024.41's requirements.

But, because res judicata bars the Section 1024.41 claim, the Court should grant summary judgment on that claim.

### 2. Section 1024.35 Claim

Section 1024.35 of Regulation X "requires a servicer of a loan to furnish a written response to a notice of error 'for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.'" *Solis v. U.S. Bank, N.A.*, 726 F. App'x 221, 222 (5th Cir. 2018) (citing 12 C.F.R. § 1024.35(a)).

"There is conflicting authority regarding whether 12 C.F.R. § 1024.35 confers a private right of action. The Fifth Circuit has not decided the question, but it has noted that '[a]t least one court has held that 12 C.F.R. § 1024.35, which incorporates violations of § 1024.39, does not provide a private right of action for damages.'

*Gresham Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 n.16 (5th Cir. 2016) (per curiam)." *Wilson v. Deutsche Bank Trust Co. Americas*, No. 3:18-cv-854, 2020 WL 570915, at \*6 (N.D. Tex. Feb. 5, 2020).

But the Court need not decide whether a private cause of action exists under Section 1024.35 because, even if it did, Gibson's claim would be barred by res judicata.

### a. Res Judicata

In the current lawsuit, Gibson claims that Fay violated Section 1024.35

> because Plaintiff had disputed the FDCPA [Validation Notice] and the monthly mortgage statement and advised Defendant Fay of these servicing errors that were contained in the documents that he had received … and once again its representative, Mr. Palikan, assured Plaintiff that his dispute would be reviewed and that a written response to the disputed information would be forthcoming, and yet no such response was ever provided, and instead Defendant Fay proceeded to post his property for foreclosure sale, and even after Plaintiff was forced to file the prior lawsuit, at no point did Defendant Fay or U.S. Bank ever provide its expressly promised response to his dispute of the [Validation Notice] and the [Statement] … .

Dkt. No. 13 at 20.

Just as with Gibson's fraud claim, his RESPA claims based on alleged errors in the Validation Notice and Statement arise from the same nucleus of operative fact as his claims in the Prior Lawsuit – the Loan and the Property – and could have been raised there. Gibson had notice of these facts, which occurred prior to his filing the Prior Lawsuit. In fact, his proposed amended complaint in the first lawsuit, which the court denied him leave to file for lack of good cause, described these same allegations. *See* Dkt. No. 35-1 at 57-58. And, as explained above, "theories which were

the subject of an untimely motion to amend, filed in the earlier action, 'could have been brought' there." *Nilsen*, 701 F.2d at 563.

And, as with the Section 1024.41 claims, the other three elements – privity and a judgment on the merits by a court of competent jurisdiction – are satisfied.

And, so, the Court should find that res judicata bars Gibson's Section 1024.35 RESPA claim.

### b.  Written Notice of Error

The undersigned next addresses Fay's challenges to the merits of Gibson's Section 1024.35 claim.

Fay first argues that Gibson's Section 1024.35 claim also fails because he "did not submit a qualified written notice of error to Fay." *See* Dkt. No. 34 at 35.

The summary judgment evidence shows that Gibson disputed the amounts in the Validation Notice and the Statement during a call with Palikan on April 19, 2021. *See* Dkt. No. 43 at 9. But he also sent an email to Galvan stating his name, his loan number, and that "[Palikan] confirmed that Fay has [his] loan modification package and the past due discrepancy will be investigated during the modification." *Id.* at 161-62. Fay fails to address this email and provides the Court with no reason to find that the email's contents, including Gibson's mention of "the past due discrepancy," do not conform to the requirements of Section 1024.35(a). *Accord Rome v. Rocket Mortgage, LLC*, No. 4:22-cv-588-SDJ-AGD, 2023 WL 7105594, at *2, (E.D. Tex. Sept. 13, 2023) (finding that plaintiff's qualified written notice satisfied Section 1024.35's requirements where they "sent to Defendant a 'Notice of errors … for imposition of

fees and/or charges for which there was no reasonable basis to impose" and "for sending inaccurate periodic billing statements").

And, so, the Court should not grant summary judgment on the Section 1024.35 claim on this basis.

### c. Damages

Fay also argues that Gibson "cannot establish damages as the result of any acts or omissions by Fay since he continues to reside at the Property without paying his mortgage." Dkt. No. 34 at 35.

Gibson's amended complaint states that, "as a result of Defendant Fay's violations of [RESPA] and Regulation X, Plaintiff has incurred actual damages in the form of his time and toil repeatedly calling and reaching out and following up on his ingoing requests for correction of the disputed information and mortgage relief assistance, and incurring attorney's fees, court costs and expenses to preserve his right, title and interest in the property and the equity that he has built up in the subject Property." Dkt. No. 13 at 21.

As an initial matter, the Fifth Circuit has held that attorneys' fees and litigation expenses do not satisfy the actual damages requirement of a RESPA claim. *See Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 F. App'x 833, 836-37 (5th Cir. 2014). Gibson's claim that he incurred attorneys' fees and court costs does not suffice as proof of actual damages.

Courts have held that "lost time and convenience" can constitute actual damages under RESPA if there is a casual connection between the violation and the

damages. *See Hill v. Lakeview Loan Servicing, LLC*, No. 4:22-cv-1069-O, 2023 WL 3237508, at \*5 (N.D. Tex. May 3, 2023) (quoting *Williams v. Wells Fargo Bank, N.A.*, No. 4:18-cv-564-O, 2018 WL 6181649, at \*4 (N.D. Tex. Nov. 27, 2018) (cleaned up). But Gibson has provided no evidence that the time he spent following up with Fay "resulted in actual pecuniary loss." *See Williams*, 2018 WL 6181649, at \*4.

But "[c]ourts in this district have [also] construed actual damages under RESPA to include inaccurately imposed late charges associated with an improperly noticed servicer transfer and payment in excess or additional interest." *Hernandez v. U.S. Bank, N.A.*, No. 3:13-cv-2164-O, 2013 WL 6840022, at \*5 (N.D. Tex. Dec. 27, 2013) (citations omitted); *see also Enis v. Bank of America, N.A.*, No. 3:12-cv-295-D, 2013 WL 840696, at \*3 (N.D. Tex. Mar. 7, 2013) ("Courts have held to be sufficient to allege damages resulting from a RESPA violation allegations that the servicer inaccurately imposed late fees after violating RESPA by failing to properly investigate and provide a written response to a [qualified written notice].").

The 2024 Statements reflect that, on January 16, 2024, Gibson was billed for a "Late Charge" of $142.01. *See* Dkt. No. 43 at 229. And the evidence supports a jury finding of a causal connection between these fees and the alleged RESPA violation: The 2024 Statements were sent after his April 19, 2021 phone call with Palikan and email to Galvan informing them of possible discrepancies on his account. *See Enis*, 2013 WL 840696, at \*3 (finding causal connection between damages and RESPA where plaintiff alleged that "he continued to be charged late fees" after sending written notice).

And, so, if Section 1024.35 does create a private cause of action, the Court should not grant summary judgment on the basis that Gibson has not provided evidence of damages.

But, because res judicata bars the Section 1024.35 claim, insofar as a plaintiff may bring one, the Court should grant summary judgment for Fay on that claim.

D.  TDCA

The Court should grant summary judgment for Fay on Gibson's TDCA claims.

### 1.  *Res Judicata*

Fay argues that the TDCA claim is barred by res judicata. The undersigned agrees in part.

As explained above, the first three elements of res judicata are satisfied – Fay and U.S. Bank are in privity, the prior Court was of competent jurisdiction, and the Prior Lawsuit was dismissed with prejudice.

As to the final element, Gibson's TDCA claim in the prior lawsuit was based on Fay,

> which at all times was acting in its capacity as a "third-party debt collector collecting the debt due another that was in default" … failing, neglecting, or refusing to ever provide Plaintiff with the required Notice of Default and Opportunity to Cure notice as required under the express terms of the [D]eed of [T]rust and Tex. Prop. Code §51.002(d) after having received and accepted several monthly payments from Plaintiff through the bankruptcy trustee payments, which payments were received and accepted by [Fay] as described herein, prior to acceleration and posting of his homestead [P]roperty for foreclosure sale … .

Dkt. No. 43 at 199 (cleaned up).

Gibson's current TDCA claim is based on Fay,

which at all times was acting in its capacity as a "third-party debt collector collecting the debt due another that was in default" … failing neglecting, or refusing to ever provide Plaintiff with any response to his dispute of the FDCPA [Validation Notice] or the [Statement] that he first received from Fay at the time of the servicing transfer, nor any accounting of the numerous payments received and accepted from the Chapter 13 bankruptcy trustee, prior to acceleration and posting of his homestead [P]roperty for foreclosure sale each constitute the intentional and/or knowing misrepresentation of the character, amount or extent of the debt to be collected … .

Dkt. No. 13 at 23. These are the same factual allegations that, in part, comprised Gibson's current fraud and RESPA claims. And, as explained above, Gibson's claims arising from these allegations come from the same nucleus of operative fact – the Loan and the Property – as the claims in the Prior Lawsuit. That Gibson has repackaged those claims as TDCA claims, or added new specific allegations about the Validation Notice and Statement, does not protect him from res judicata because these facts relate to the Loan and occurred before Gibson filed the Prior Lawsuit.

And, so, the Court should find that res judicata bars those TDCA claims that are based on the Validation Notice and Statement.

But, insofar as Gibson's TDCA claims are also based on the 2024 Statements, those claims could not have been asserted in the Prior Lawsuit because those statements did not yet exist. *Accord ASARCO, L.L.C.*, 858 F.3d at 957. And, so, the Court should find that those claims are not barred by res judicata. Below, the undersigned will address those claims further.

### 2. Statute of Limitations, Pleading Standards, and Damages

First, Fay argues that Gibson's TDCA claims are also barred by the statute of limitations. *See* Dkt. No. 34 at 37-38.

-37-

Fay contends that TDCA claims are subject to a two-year statute of limitations. *See* Dkt. No. 34 at 37; *see, e.g.*, *Schultz v. HomeBridge Financial Servs., Inc.*, No. 24-50193, 2025 WL 1467431, at *4 (5th Cir. May 22, 2025) (citing *Clark v. Deutsche Bank Nat'l Tr. Co.*, 719 F. App'x 341, 343 (5th Cir. 2018)).

As to the TDCA causes of action arising out of the Validation Notice and Statement, which accrued on April 19, 2021, Gibson concedes that those claims are time-barred under a two-year statute of limitations, because the current lawsuit was filed on May 8, 2024. *See* Dkt. No. 42 at 31.

As to the 2024 Statements, which added amounts for "recoverable corporate advances," Gibson contends that those are "new violations of the TDCA." Dkt. No. 42 at 31-32. The two-year statute of limitations has not run on those claims.

Next, Fay argues that any TDCA claim arising out of the 2024 Statements are barred because they were not alleged in the complaint. *See* Dkt. No. 47 at 7-8 ('Plaintiff is precluded 'from advancing a new claim or reframing a previously presented one in response to a motion for summary judgment.'" (quoting *Pittman v. U.S. Bank NA*, 840 F. App'x 788, 789-90 (5th Cir. 2021))).

The undersigned agrees that Gibson's complaint does not give Fay fair notice of the TDCA allegations against it. Gibson did raise TDCA claims against Fay in his amended complaint; incorporate by reference all the previous factual allegations in the complaint to the TDCA claim; and allege facts regarding the February 12, 2024 and April 16, 2024 statements in the complaint's statement of facts. *See* Dkt. No. 13 at 15-16, 22-23. But Gibson also, "[o]ut of an abundance of caution," alleges that Fay's

conduct violated four separate provisions of the TDCA – Sections 392.301(a)(7), 392.301(a)(8), 392.304(a)(8), and 392.304(a)(19). *See* Dkt. No. 13 at 24. His amended complaint proceeds to list – for almost six pages – what appears to be the full text of these TDCA provisions. *See id.* at 24-30. But it does not indicate which facts pertain to which claims.

Pleading in this manner is the "oppo[site of] the 'short and plain statement' requirement contemplated by Rule 8." *Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2019 WL 5031357, at *5 (N.D. Tex. July 29, 2019) (citations omitted), *rec. accepted*, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019). And doing so makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

And, so, the Court can consider this TDCA claim as improperly pleaded and improperly raised for the first time in Gibson's response. *Accord Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 935 (N.D. Tex. 2014) ("Plaintiff made no allegations related to a misrepresentation made by Defendant—other than her conclusory allegations tracking the TDCA's statutory language—or even how the debt was misrepresented."); *Franklin v. BAC Home Loans Servicing, L.P.*, No. 3:10-cv-1174-M, 2011 WL 248445, at *3 (N.D. Tex. Jan. 26, 2011) ("Merely stating Defendant violated the TDCA, without more factual allegations, is a legal conclusion couched as a factual assertion … .").

And, even if the Court were to consider the merits of the TDCA claims based

on the 2024 Statements, those claims would fail because Gibson "failed to establish damages caused by the TDCA violations" arising from the 2024 statements. *See* Dkt. No. 47 at 9.

Under the TDCA, plaintiffs must show they suffered actual, foreseeable injuries, and those injuries must be linked to the TDCA violations of which they complain. *See Elston v. Resolution Servs., Inc.*, 950 S.W.2d 180, 185 (Tex. App. – Austin 1997, no writ). Here, Gibson alleges that he "sustained and incurred damages" as a result of the alleged TDCA violations. *See* Dkt. No. 13 at 23. But Gibson does not provide any evidence of actual damages resulting from the alleged misrepresentations in the 2024 Statements.

And, so, the Court should find that each TDCA claim fails as a matter of law. All the claims are barred by res judicata. The claims arising out of the Validation Notice and Statement are time-barred under a two-year statute of limitations. And the claims arising out of the 2024 Statements are barred because they were not properly pleaded and, even if they were, Gibson supplies no evidence of damages.

The Court should grant summary judgment for Fay on the TDCA claims and dismiss them.

E. Attorneys' Fees

Both Gibson and Fay have moved for attorneys' fees. *See* Dkt. Nos. 34 & 42.

Federal Rule of Civil Procedure 54(d)(2) provides that "[a] claim for attorneys' fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages" and that,

"[u]nless a statute or a court order provides otherwise, the motion must: (i) be filed no later than 14 days after the entry of judgment." FED. R. CIV. P. 54(d)(2)(A), (B).

The Court should order the parties to submit any request for attorneys' fees by separate motion pursuant to Rule 54(d)(2), after the Court enters judgment.

## II.    The Court should grant Fay's Motion for Leave.

On July 31, 2025 – the day its summary judgment reply was due – Fay filed a Motion for Leave to File Supplemental Appendix to Defendant's Brief in Support of its Motion for Summary Judgment. *See* Dkt. No. 46.

Northern District Civil Local Rule 56.7 provides that "[e]xcept for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence." N.D. TEX. CIV. R. 56.7. "In short, Rule 56.7 'regulates the summary judgment materials that can be filed' by requiring leave of court for supplemental materials." *Thomas v. State Farm Lloyds*, No. 3:15-cv-1937-B, 2016 WL 9527975, at *1-2 (N.D. Tex. Oct. 6, 2016) (quoting *Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. 3:06-cv-0073-D, 2007 WL 1969752, at *2 (N.D. Tex. June 27, 2007)). "Local Rule 56.7 gives a presiding judge leeway to allow a party to supplement its motion for summary judgment," *Smith v. State Farm Lloyds*, No. 2:18-cv-210-Z-BP, 2020 WL 2832393, at *5 (N.D. Tex. June 1, 2020), and "[t]he decision to grant or deny leave to supplement is within this Court's sound discretion," *Willingham v. Mktg. Assocs., Inc.*, No. 3:15-cv-1809-BN, 2016 WL 1182480, at *1 (N.D. Tex. Mar. 28, 2016).

Fay argues that, because Gibson attempted to raise new theories of TDCA and Section 1024.41 liability in his summary judgment response, Fay should be permitted to provide additional evidence to dispute those claims. *See id.*

As explained above, the undersigned agrees that some of Gibson's TDCA claims were improperly pleaded. And Fay submitted the proposed supplemental appendix on July 31, 2025, before its deadline to reply expired.

But, even without this additional evidence, the Court should find that Gibson's Section 1024.41 RESPA claims fail as a matter of law because they are barred by res judicata. And the Court should find that Gibson's TDCA claims fail as a matter of law because (1) they are all barred by res judicata; (2) Gibson has conceded that some of his TDCA claims are barred by the statute of limitations; and (3) the remaining TDCA claims are unsupported by allegations or evidence of damages.

And, so, the Court need not review the supplemental evidence to grant summary judgment on the TDCA or Section 1024.41 claims. *Cf. Parsons v. Liberty Ins. Corp.*, No. 3:20-cv-1682-K, 2021 WL 2414765, at *1 (N.D. Tex. June 14, 2021) (granting leave to file supplemental appendix where the new materials could "materially affect the outcome" of the case).

And it should dismiss the motion [Dkt. No. 46].

### Recommendation

The Court should grant Defendant Fay Servicing LLC's Motion for Summary Judgment [Dkt. No. 33], deny Defendant's Motion for Leave to File Supplemental Appendix to Defendant's Brief in Support of its Motion for Summary Judgment [Dkt.

No. 46], and dismiss Plaintiff Antonio Gibson's claims with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 26, 2026

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE